IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| BENJAMIN ZAMBALI, on his own behalf and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> SHULMAN ROGERS, P.A., *et al.*, <br><br> Defendants. | * <br> * <br> * <br> * <br> * <br> * <br> * Civil Case No.: SAG-23-03194 <br> * <br> * <br> * <br> * <br> * <br> * |

\* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Benjamin Zambali ("Zambali") filed this putative class action against three defendants, Shulman Rogers, P.A. ("Shulman Rogers"), Columbia 531, LLC ("Columbia 531"), and Greystar Management Services, L.P. ("Greystar") (collectively, "Defendants"), relating to efforts to collect unpaid rent accrued during a period when Zambali alleges his landlord was not properly licensed. ECF 1. The Complaint relies upon this Court's federal question jurisdiction pursuant to 28 U.S.C. § 1331, because Zambali asserts a claim under the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692–1692p, against Shulman Rogers in addition to multiple state law claims against all of the Defendants. Each Defendant has filed a motion to dismiss the Complaint. ECF 18, 25, 26. This Court has reviewed the filings, including the oppositions and reply, ECF 27–30, and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons explained below, Shulman Rogers's Motion to Dismiss Plaintiff's Class Action Complaint, ECF 25, will be GRANTED as to the FDCPA claim, which will be dismissed without prejudice. This Court declines to exercise pendent jurisdiction over the remaining state law claims, which can be reasserted against the Defendants in state court.

I.  **FACTUAL BACKGROUND**

The following facts are derived from Zambali's Complaint, ECF 1, and are assumed to be true for purposes of adjudicating this motion to dismiss. In Howard County, Maryland, the Howard County Property Maintenance Code for Rental Housing requires all rental housing to be licensed. ECF 1 ¶ 12. Each rental property is assigned a license number. *See id.* A rental property's license status can be verified on Howard County's website. *Id.*

Columbia 531 owns 10X Living at Columbia Town Center ("the Property"), which is a 531-unit apartment complex in Howard County. *Id.* ¶ 11. Greystar serves as the property manager for the Property. *Id.* On or about August 1, 2021, the Property's license lapsed and showed as "Delinquent" on Howard County's website. *Id.* ¶ 13; ECF 28-1.[1] On January 19, 2023, the Property's license status changed to "Ready for Issuance" and then changed to "Issued" on June 15, 2023. ECF 28-1. During what Zambali calls "the unlicensed period" between 2021 and 2023, Greystar and Columbia 531 continued to collect rent through a resident portal website. ECF 1 ¶ 16.

Zambali rented 10420 Swift Stream Place #308, a unit in the Property, during the unlicensed period. *Id.* ¶ 15. Occasionally, Zambali did not timely pay his rent. *Id.* ¶ 18. When Zambali failed to make timely payments, all three Defendants engaged in collection efforts. *Id.* at ¶¶ 18–24. On no fewer than three occasions, as part of their collection efforts, Columbia 531 and

---

[1] While analysis of a motion to dismiss is typically confined to the contents of the complaint, Zambali attached an exhibit to his opposition, consisting of Howard County's online property licensing database. *See* ECF 28-1. This Court is permitted to consider that exhibit, and other such documents, which constitute matters of public record. *See* FED. R. EVID. 201; *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508–09 (4th Cir. 2015).

Greystar provided Zambali with "Notices of Intent to File a Complaint for Summary Ejectment." *Id.* ¶ 19. These collection efforts occurred during the unlicensed period. *Id.*

Shulman Rogers is a law firm that represents Columbia 531 and Greystar. *Id.* ¶ 21. As part of its collection efforts, Shulman Rogers, on behalf of Columbia 531 and Greystar, filed two failure-to-pay rent actions against Zambali. *Id.* ¶¶ 19, 24. The first failure-to-pay rent action ("Case 5942") was filed on June 12, 2023. ECF 25 at 2 & n.1 (citing Maryland's Judiciary Case Search website). When Zambali appeared in court for Case 5942, Shulman Rogers voluntarily dismissed the case. ECF 1 ¶ 23. Shulman Rogers filed the second failure-to-pay-rent action ("Case 6658") on July 3, 2023. ECF 25 at 3 & n.2 (citing Maryland's Judiciary Case Search website). Again, when Zambali appeared in court for Case 6658, Shulman Rogers voluntarily dismissed the case. ECF 1 ¶ 25. Both cases sought to collect unpaid rent accrued during the unlicensed period. *Id.* ¶¶ 21, 24. The complaint Shulman Rogers filed in Case 5942 contained the Property's expired license number. *Id.* ¶ 22.

## II.  LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 12(b)(1)

Rule 12(b)(1) of the Federal Rules of Civil Procedure authorizes dismissal for lack of subject matter jurisdiction, including claims for which a plaintiff lacks standing. *See Barnett v. United States*, 193 F. Supp. 3d 515, 518 (D. Md. 2016). A challenge to subject matter jurisdiction may proceed either as a facial challenge, asserting that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting that the jurisdictional allegations of the complaint are not true. *Mayor & City Council of Balt. v. Trump*, 416 F. Supp. 3d 452, 479 (D. Md. 2019) (internal quotation marks omitted) (quoting *Kerns v.*

*United States*, 585 F.3d 187, 192 (4th Cir. 2009)). The plaintiff bears the burden of proving, by a preponderance of the evidence, the existence of subject matter jurisdiction. *Id.*[2]

### B. Federal Rule of Civil Procedure 12(b)(6)

A defendant is permitted to test the legal sufficiency of a complaint by way of a motion to dismiss. *See, e.g.*, *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Rule 8(a)(2), which provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Id.* at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ." (citation omitted)); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). However, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Further, federal pleading rules "do not countenance dismissal of a

---

[2] Though Shulman Rogers brings its motion to dismiss under Rule 12(b)(6) only, its standing argument challenges this Court's subject matter jurisdiction and is therefore properly considered under Rule 12(b)(1). *Pruitt v. Resurgent Cap. Servs., LP*, 610 F. Supp. 3d 775, 779 (D. Md. 2022).

complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Id.* at 556 (internal quotation marks and citation omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). However, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

### III. FDCPA CLAIM

Maryland law prohibits a landlord from filing an action against a tenant for unpaid rent that accrued during a period when the landlord's property was not licensed. *See Assanah-Carroll v.*

*Law Offs. of Edward J. Maher, P.C.*, 281 A.3d 72, 76 (Md. 2022). Zambali tries to extend that prohibition to argue that Shulman Rogers violated two provisions of the FDCPA by attempting to collect the delinquent rent: 15 U.S.C. § 1692f and 15 U.S.C. § 1692e. ECF 1 ¶¶ 38–46. According to the Complaint, Shulman Rogers violated these provisions by using "unfair or unconscionable means to collect or attempt to collect any debt." *Id.* ¶ 41. Shulman Rogers allegedly did this by "attempt[ing] to collect unpaid rent incurred during the time that a rental property lacked a necessary license." *Id.* ¶ 45. Additionally, the Complaint alleges that Shulman Rogers "made false representations of the character, amount, or legal status of any debt" by "attempting to collect rental obligations incurred while a property was unlicensed." *Id.* ¶ 46. Zambali asserts that he and others similarly situated seek damages "in an amount equal to all amounts paid by [Zambali] or members of Class I after [Shulman Rogers] filed a failure-to-pay rent action or otherwise engaged in collection activity towards them with respect to rent attributable [to] the period that the relevant property was unlicensed." *Id.* ¶ 46(A).

## IV.   ARTICLE III STANDING ANALYSIS

Article III of the U.S. Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." U.S. CONST. art. III, § 2. "One element of the case-or-controversy requirement is that plaintiffs must establish that they have standing to sue." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (internal citations and quotation marks omitted). To prove Article III standing, a plaintiff must establish the three "irreducible" minimum requirements: (1) injury-in-fact, (2) causation, and (3) redressability. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). At issue here are the first two elements—injury-in-fact and causation. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo,*

*Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*, 504 U.S. at 560). And even if a plaintiff demonstrates injury in fact, he must show that the injury is "fairly traceable to the challenged action of the defendant." *Lujan*, 504 U.S. at 561 (internal quotation marks and citation omitted).

Zambali has not established standing to bring his FDCPA claim against Shulman Rogers because he has not alleged that he suffered an injury-in-fact. This element requires a concrete injury. *Spokeo*, 578 U.S. at 339. "Central to assessing concreteness is whether the asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts—such as physical harm, monetary harm, or various intangible harms including reputational harm." *TransUnion v. Ramirez*, 594 U.S. 413, 417 (2021) (quoting *Spokeo*, 578 U.S. at 340–41). While Zambali's Complaint does not identify any particular harm he suffered from Shulman Rogers's conduct, in his opposition, Zambali asserts that his injuries have a close relationship with the kinds of intangible harms otherwise recognized in American courts: (a) the defendant filing an illegal lawsuit; (b) defamation; and (c) the wrongful use of civil proceedings. Each is addressed below.

### A. Defendant Filing an Illegal Lawsuit

Zambali claims he was injured because Shulman Rogers filed Case 5942 and Case 6658 seeking to recoup unpaid rent accrued during a period when the Property was unlicensed. The then-Maryland Court of Appeals (now, the Maryland Supreme Court) held that "a landlord may not file an action against a tenant to recover unpaid rent that is attributable to the period when the property was not licensed." *Assanah-Carroll v. Law Offs. of Edward J. Maher, P.C.*, 281 A.3d 72, 76 (Md. 2022). If a landlord files an action against a tenant to recover unpaid rent incurred during an unlicensed period, the "tenant may have a claim under the MCDCA and MCPA *to the extent that the landlord's unlawful collection activity caused the tenant to suffer damages*." *Id.* (emphasis

added). Damages include "rent payments made *in response to* the landlord's attempts to collect the unpaid rent." *Id.* (emphasis added).

Even under *Assanah-Carroll*, then, Zambali has not established any concrete harm against Shulman Rogers because he has not alleged that he suffered any damages in response to the actions Shulman Rogers took. Shulman Rogers voluntarily dismissed both cases when Zambali went to court. Although Shulman Rogers should not have filed these cases because, according to Zambali, the Property was not licensed, the Complaint fails to identify a single injury resulting from the lawsuits. Zambali never alleged that he made any payments in response to those cases. There was never a judgment against Zambali. Zambali did not have to move out of the Property, nor did he allege that he incurred any fees or charges relating to the lawsuits.

Zambali is essentially asking this Court to find that Shulman Rogers injured Zambali because it violated the law.[3] But "an injury in law is not an injury in fact." *Ramirez*, 594 U.S. at 427. In determining standing, "an important difference exists between (i) a plaintiff's statutory cause of action to sue a defendant over the defendant's violation of federal law, and (ii) a plaintiff's suffering concrete harm because of the defendant's violation of federal law." *Id.* at 426–27. Without providing a concrete injury traceable to Shulman Rogers's actions, filing the illegal lawsuits alone cannot afford Zambali standing to sue.

---

[3] Although this Court need not reach the issue, it notes that the damages Zambali requests from Shulman Rogers, the return of his rent payments, are entirely divorced from Shulman Rogers's actions, the filing of lawsuits. While this Court can conceive of a hypothetical plaintiff who may have remitted unpaid rent in response to a lawsuit being filed, Zambali has not alleged facts suggesting he fits in that category.

## B. Defamation

Zambali also claims the injury present in this case is comparable to the concrete injury that the Supreme Court found to exist in *Ramirez*. The factual background of that case is important for comparison purposes. When the *Ramirez* plaintiff sought to buy a new car, the dealership sought information from TransUnion, a credit reporting agency. *Id.* at 420. TransUnion not only checked the plaintiff's name through its financial databases, but also consulted a list maintained by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC"). *Id.* The OFAC list consists of known terrorists and other known criminals. American businesses who conduct business with individuals and entities on the OFAC list are subject to penalties. *Id.* (citing 31 C.F.R. pt. 501, App. A (2020)). When the car dealership obtained the plaintiff's credit report with an OFAC alert, the dealership advised the plaintiff in front of his family that he was on the OFAC list. *See id.* The plaintiff then requested his credit file from TransUnion and discovered that it reflected that his name appeared on the OFAC list. *Id.* The *Ramirez* plaintiff filed a class action on behalf of himself and others, asserting, *inter alia*, that TransUnion's practice of simply "name matching" to the OFAC list, without taking further steps to verify whether the people were actually listed or simply had the same name as a listed individual, violated the Fair Credit Reporting Act. *See id.* at 421.

The *Ramirez* Court found that the plaintiff and certain class members suffered a concrete injury because TransUnion had labeled them as potential "terrorist, drug traffickers, or serious criminals" in their credit reports and disseminated the reports to third parties. *Id.* at 432. The Court found the harm analogous to that incurred in a defamation lawsuit, where a defendant publishes a defamatory statement to a third party that would subject the plaintiff to hatred, contempt, or ridicule. *Id.* The Court found that the harm from misrepresenting someone in their credit report to

be a potential terrorist, drug trafficker, or serious criminal has a sufficiently close relationship to the harm that is traditionally recognized in a defamation case. *Id.*

In this case, Zambali asserts that being subjected to an illegal collection lawsuit is "a far wider and more serious dissemination of inaccurate information than that the Supreme Court held to be sufficient to confer standing" in *Ramirez*. ECF 28 at 11. This Court disagrees. It is true that a case publicly filed on a court docket is more widely disseminated than an individual's credit report. However, this case is distinguishable from *Ramirez* because the plaintiffs in *Ramirez* could prove that they were not persons listed on OFAC's list. In the named plaintiff's credit report, TransUnion had published to a third party a sufficiently misleading statement about him—that he potentially matched an individual on OFAC's list. *See Ramirez*, 594 U.S. at 432–33. Here, Zambali acknowledged that he sometimes "would not timely make the total payment," ECF 1 ¶ 18, and Shulman Rogers points out that Zambali agreed to pay rent in order to live at the Property but failed to make the required payments, ECF 30 at 8. The allegedly false statement, then, was not "Zambali owes unpaid rent" but "this landlord is licensed and entitled to collect rent from tenants." The latter statement, even if false, is in no way defamatory to Zambali.

Zambali also attempts to support his argument by citing *Parker v. Goldman Sachs Mortgage Co.*, 596 F. Supp. 3d 559 (D. Md. 2022). In that case, a lender unlawfully imposed an inspection fee in connection with the plaintiffs' loan. *Id.* at 657. In *Parker*, the court held that, since Maryland law prohibited the lender from charging the inspection fee, "an attempt to collect such a fee falsely overstates what the lender is owed under Maryland law." *Id.* Thus, the court could readily identify the concrete harm as the amount of excess charges collected. Here, however, Zambali alleges no such collection of excess charges.

10

Finally, Zambali places undue emphasis on *Assanah-Carroll*, 281 A.3d 72 (Md. 2022). While the holding in that case prevents landlords from using the court system to collect unpaid rent, the now-Maryland Supreme Court did not hold that tenants are entitled to live rent free when a rental property's license expires. Put another way, denying unlicensed landlords access to the courts to collect unpaid rent does not eliminate a tenant's rental obligations. The *Assanah-Carroll* court specifically and narrowly held that a "tenant who voluntarily paid rent to a landlord who lacked a rental license may not bring a private action under the MCPA or the MCDCA to recover restitution of rent based on the landlord's lack of licensure." *Id.* at 75. On the same day as *Assanah-Carroll,* in *Aleti*, the Maryland Supreme Court held that "the intent of the rental license law is to force compliance with the obligation to become licensed, not to provide tenants with rent-free housing in unlicensed dwellings." *Aleti v. Metro. Balt., LLC*, 279 A.3d 905, 931 (Md. 2022). Additionally, the *Aleti* court stated that "a tenant may not recover rent voluntarily paid to an unlicensed landlord due solely to the lack of a license." *Id.* at 931–32.

Essentially, then, Zambali still owed a rental debt to his landlord, but if the landlord was unlicensed, the landlord could not use Maryland courts to collect that debt. During an unlicensed period, tenants may continue to make voluntary payments and tenants cannot recover these payments from the landlord. Nothing prevents a landlord from asking tenants to make voluntary payments during an unlicensed period, but if the tenants refuse to pay, the landlord cannot use the Maryland courts to force the payments to be made.

Taking all of this into consideration, Shulman Rogers did not disseminate "inaccurate information" when it filed the two cases. Although the complaints may have been unlawful under *Assanah-Carroll*, they were not defamatory. Zambali admittedly did not timely make his rent payments and his debt did not disappear simply because his landlord did not have a license. Unlike

11

in *Parker*, where the inspection fee could not be lawfully charged, Zambali's rent could be charged. The landlord simply could not collect the debt using judicial process. Zambali has not alleged that Shulman Rogers's lawsuits overstated or misrepresented the accrued rent he owed. In the absence of any false statement or misrepresentation about Zambali, any injury Zambali suffered is not analogous to a harm recognized in a defamation case.

### C.  Wrongful Use of Civil Proceedings

Finally, citing *Viernes v. DNF Associates LLC*, 582 F. Supp. 3d 738, 751 (D. Haw. 2002), Zambali argues that the harm of being subjected to an unlawful debt collection bears a close relationship to the harm suffered in cases alleging the wrongful use of civil proceedings. The *Viernes* court reasoned that being wrongfully sued can have serious consequences including the monetary cost of litigation defense or the reputational damage from personal problems being aired in public. *Id.* at 752–53. In *Viernes*, the court also found standing because the Plaintiff pleaded a concrete injury: $13.70 in postage fees in response to the collection lawsuit. *Id.* at 756.

In contrast, Zambali's Complaint does not allege any reputational or financial harms occasioned by Shulman Rogers's two brief lawsuits. If Zambali suffered any, he failed to plead them. The only harm included in Zambali's Complaint is the rent he paid during the period the Property was unlicensed, which he specifically alleges he paid "in response to the unlawful collection efforts by Defendants Columbia 531 and Greystar," ECF 1 ¶¶ 20, 65, not Shulman Rogers's lawsuits. Additionally, he paid the rent money to Columbia 531 and Greystar, not to Shulman Rogers. Therefore, even if there can be a relationship between being subjected to an

unlawful lawsuit and injury from the wrongful use of civil proceedings, Zambali fails to allege it in a way traceable to Shulman Rogers.[4]

## V. STATE LAW CLAIMS

This Court lacks any basis to exercise diversity jurisdiction, because both Plaintiff and Shulman Rogers are citizens of Maryland. With the dismissal of the sole federal claim over which this Court would have original jurisdiction, this Court must decide whether to exercise supplemental or pendent jurisdiction over the remaining state law claims. *See* 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if the district court has dismissed all claims over which it has original jurisdiction."). This case presents a quintessential consumer protection dispute, which will require evaluation of typical state law-based issues. This case is at the very earliest stages of adjudication, making it appropriate for this Court to decline the exercise of pendent or supplemental jurisdiction over Plaintiff's state law claims. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) ("When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction . . . ." (footnote omitted)). Zambali is free to refile his state law claims in an appropriate state court.

## VI. CONCLUSION

For the reasons stated above, Shulman Rogers's Motion to Dismiss Plaintiff's Class Action Complaint, ECF 25, is GRANTED as to Count One of the Complaint, ECF 1, which is dismissed

---

[4] For the same reasons above, Zambali also failed to demonstrate that every class member in this putative class action has Article III standing. *See Ramirez*, 594 U.S. at 431 ("Every class member must have Article III standing in order to recover individual damages.").

without prejudice. This Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims, which may be refiled in state court.

      A separate Order follows.


Dated: June 25, 2024                                                 /s/
                                                              Stephanie A. Gallagher
                                                              United States District Judge